UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RONALD F. VERLEE, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:12-CV-45-TLS-RBC |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Ronald F. Verlee, brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final decision denying his application for disability insurance benefits. On February 17, 2012, this Court referred the matter to Magistrate Judge Roger B. Cosbey to prepare a report and recommendation. After the submission of the parties' briefs, Magistrate Judge Cosbey filed a Report and Recommendation [ECF No. 27] on February 4, 2013, recommending that the Court deny the Plaintiff's request to reverse the Administrative Law Judge's (ALJ) opinion. The Magistrate Judge reported that (1) the ALJ and Vocational Expert properly relied on the Dictionary of Occupational Titles in determining whether the Plaintiff could perform his past work as a minister; (2) the ALJ's finding that the Plaintiff could perform his past relevant work as a minister did not violate the Plaintiff's First Amendment rights; (3) the ALJ's consideration of Dr. Musgrave's opinion was appropriate and supported by substantial evidence; (4) the ALJ did not commit legal error by failing to include a bladder and bowel limitation in his RFC assessment; (5) the ALJ did not commit legal error by failing to incorporate into his RFC assessment Dr. Musgrave's finding that the Plaintiff was markedly

limited in his ability to respond appropriately to changes in the work setting; and (6) the ALJ adequately accounted for the Plaintiff's left upper extremity limitations in his RFC assessment.

On March 4, 2013, the Plaintiff filed his Objections to the Report and Recommendations [ECF No. 30] requesting that the Court reject the Report and Recommendation findings and remand the Plaintiff's claim to the Agency for clarification of the ALJ's decision. In the alternative, the Plaintiff moves the Court to remand the case to the ALJ for a new hearing. The Defendant did not file a Response to the Plaintiff's Objections.

Because the Plaintiff has objected to the Report and Recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## BACKGROUND

Applying the familiar five-step process for determining whether an applicant meets the definition of disability contained in the Social Security Act, *see* 20 C.F.R. § 404.1520; *Craft v. Astrue*, 539 F.3d 668, 673–74 (7th Cir. 2008), the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date, had severe mental and physical impairments that did not meet a listing, and maintained the residual functional capacity (RFC) to perform his past relevant work as a minister as it is typically performed in the national economy. Accordingly, the ALJ denied the Plaintiff's claim for Disability Insurance Benefits.

The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision

the final decision of the Commissioner, *see* 20 C.F.R. § 404.981, and the Plaintiff initiated a timely action for judicial review. The Report and Recommendation, the Plaintiff's Objections, and the Defendant's Response to Plaintiff's Objections raise the following issues for this Court's consideration: (1) whether the ALJ properly considered the Plaintiff's difficulties with urinary frequency and bowel incontinence and (2) whether the ALJ properly determined the Plaintiff's RFC, particularly with respect to the Plaintiff's mental limitations.

## DISCUSSION

A reviewing court will affirm the denial of disability benefits so long as the ALJ's decision is supported by substantial evidence, meaning evidence "sufficient for a reasonable person to accept as adequate to support the decision," and the court will not reweigh evidence or substitute its judgment for that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008) (internal citation omitted). The ALJ must build a "logical bridge" between the evidence and his conclusions. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Even if "reasonable minds could differ" about whether a claimant is disabled, the Court will affirm the ALJ's denial of benefits so long as the decision has adequate support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quotation marks omitted).

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A claim of disability is determined under a five-step sequential analysis. *Craft*, 539 F.3d at 673.

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's [RFC] and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Id.* at 674. The applicant bears the burden of proof in each of the first four steps. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The government bears the burden of proof at the fifth step and must present evidence establishing that the applicant possessed the RFC to perform work that exists in a significant quantity in the national economy. 42 U.S.C. § 423(d)(2)(A); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

### A. The ALJ's consideration of the Plaintiff's difficulties with urinary frequency and bowel incontinence

First, the Plaintiff argues that the ALJ overlooked his difficulties with urinary frequency and bowel incontinence. (Pl.'s Mot. for Review 5–11, ECF No. 30.) In the Plaintiff's view, *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009), requires that this case be remanded to the ALJ for a

determination of whether the Plaintiff's difficulties with urinary frequency and bowel incontinence affect his ability to work.

In evaluating social security disability claims, the Social Security Administration (SSA) will only consider impairments identified by a claimant or impairments about which the SSA receives evidence. 20 C.F.R. § 404.1512(a). When the SSA has evidence of an impairment, the Social Security regulations provide:

> In determining whether [a claimant's] physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, [the agency] will consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If [the agency] find[s] a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.

20 C.F.R. § 404.1523. An ALJ is required to consider *all* impairments, severe and non-severe, because "[e]ven a mild impairment can put a disproportionately greater strain on a person who concurrently is suffering from a more severe affliction." *Winfield v. Commissioner of Soc. Sec.*, Cause No. 2:11–cv–432–PPS, 2013 WL 692408, at *4 (N.D. Ind. Feb. 25, 2013) (citing *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)). Ultimately, "[a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

In *Terry*, the claimant suffered from pelvic floor disorder, urinary urgency, and hematuria among other impairments. 580 F.3d at 477. The court reviewed the ALJ's opinion and emphasized that it "[did] not even mention Terry's pelvic floor and urinary disorders, impairments that must be considered to determine whether an applicant is disabled." *Id.* (citing

*Golembiewski*, 322 F.3d at 917). Continuing, the Seventh Circuit observed that, while pelvic floor disorder and urinary urgency might not have been disabling on their own, the ALJ was nonetheless obligated to consider the combined effects of *all* of the claimant's impairments, "even those that would not be considered severe in isolation." *Id.* (citing *Villano*, 556 F.3d at 563; *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Golembiewski*, 322 F.3d at 918). In conclusion, the Court remanded the case to the ALJ with instructions to evaluate the claimant's pelvic floor disorder and urinary urgency and their impact on the claimant's ability to work. *Terry*, 580 F.3d at 477.

Similarly, in *Golembiewski*, although the claimant presented evidence that he suffered from bowel and bladder dysfunction, the ALJ failed to discuss these impairments. 322 F.3d at 917. The Commissioner argued that the claimant's incontinence was too infrequent to significantly limit the claimant's ability to work and, therefore, that remand was unwarranted. *Id.* The Seventh Circuit rejected the Commissioner's argument, stating, "[e]vidence that Golembiewski's bladder impairment did not interfere with his work . . . would be a reason for the ALJ to discount the disabling nature of the problem, *but it would not justify ignoring the problem entirely as the ALJ did here*." *Id.* (emphasis added). Consequently, the court remanded the case to the ALJ with instructions to consider the impact of the claimant's bowel and bladder dysfunction on his ability to engage in substantial gainful activity. *Id.*

In this case, the Plaintiff presented evidence that he suffered from bowel and bladder dysfunction. On January 20, 2007, Heidi Musgrave, Ph.D, completed a neuropsychological evaluation of the Plaintiff. (R. 364–79.) Dr. Musgrave interviewed the Plaintiff regarding his symptoms, including his bowel and bladder dysfunction:

> [The Plaintiff] noted urinary frequency, but not incontinency, which he reports is a recent problem. He also states he has some bowel problems including two recent episodes of not being able to make it to the bathroom, although he denied any specific diarrhea. He states that these episodes involve soft bowels and he was unable to get to the [bathroom] in time. One episode he needed to go to a meeting and stopped at a mall to have lunch and was unable to make it to the bathroom on time. . . . He has a history of bowel problems. Reverend Verlee indicates that early in his career he also had significant bowel problems on Sundays when he needed to preach the sermon stating for the first 4-5 years of his ministry he would have diarrhea every Sunday morning.

(R. 369.) The Plaintiff's wife corroborated his account of his bowel and bladder problems, noting that he "ha[d] some urgency with urine as well as difficulties with his bowel[s]." (R. 372.) In her section entitled "Behavioral Observations," Dr. Musgrave observed that the Plaintiff exhibited signs of urinary frequency and that he did have to go to the restroom "frequently" during the examination. (R. 374.) In her Mental Residual Functional Capacity Assessment, Dr. Musgrave noted that the evidence suggested that the Plaintiff's anxiety might cause urinary frequency and bowel difficulties. (R. 381.) On April 15, 2009, the Plaintiff's wife completed a Function Report - Adult - Third Party. (R. 210–17.) In her Report, the Plaintiff's wife observed that the Plaintiff "sometimes" lost control of his bowels. (R. 211.)

      At Step Two of the sequential evaluation, the ALJ found that the Plaintiff's severe impairments included: status-post an episode of Epstein Barr virus encephalitis; lymphopenia; left temporal lobe epilepsy; and cognitive disorder. (ALJ's Decision 3.) At Step Three of the sequential evaluation, the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (*Id.*) At Step Four of the sequential evaluation, the ALJ completed his RFC assessment, finding that the Plaintiff was capable of performing light work with numerous exertional and nonexertional limitations. (*Id.* 5.) Significantly, the ALJ's opinion does not include any discussion of the

Plaintiff's bowel and bladder dysfunction.

Here, the Plaintiff presented the ALJ with Dr. Musgrave's neuropsychological evaluation and a third party function report, both of which described the Plaintiff's difficulties with urinary frequency and bowel incontinence. These are the types of evidence an ALJ is obligated to consider under Social Security regulations in evaluating a claimant's medical impairments. *See* 20 C.F.R. § 404.1512(b) ("Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim. This includes, but is not limited to: . . . (2) Other evidence from medical sources, such as medical history, opinions, and statements about treatments you have received; (3) Statements you or others make about your impairment(s), your restrictions, . . . or any other relevant statements you make to medical sources during the course of examination or treatment.") "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry*, 580 F.3d at 477 (citing *Villano*, 556 F.3d at 563; *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). In this case, contrary to 20 C.F.R. § 404.1523 and Seventh Circuit precedent, the ALJ failed to discuss, and effectively ignored, the Plaintiff's bowel and bladder dysfunction. Therefore, remand is required in this case. *See Denton*, 596 F.3d at 423 (citing *Golembiewski*, 322 F.3d at 918) ("A failure to fully consider the impact of non-severe impairments requires reversal.")

The Court cannot excuse the ALJ's failure to consider the Plaintiff's bowel and bladder dysfunction under the harmless error doctrine. An error is harmless when it is "predictable with great confidence that the agency will reinstate its decision on remand." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). This analysis is prospective and "not an exercise in rationalizing the ALJ's decision." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The Court is unable to

determine with any confidence whether the agency will reinstate its decision on remand because the agency failed to provide any explanation or discussion of the Plaintiff's problems with urinary frequency and bowel incontinence. Consequently, the Court has no place to start its review—any analysis of the agency's decision would require the Court to engage in an *ex post* rationalization of the agency's nonexistent discussion. Under these circumstances, it would be inappropriate to apply the harmless error doctrine.

On remand, the ALJ should evaluate whether the Plaintiff's bowel and bladder dysfunction affect his ability to work, particularly with respect to his RFC assessment, *see* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

### B.       The ALJ's Consideration of the Plaintiff's Mental Impairments

Next, the Plaintiff challenges the ALJ's RFC assessment and the ALJ's consideration of the Plaintiff's mental limitations. (Pl.'s Mot. for Review 11–20.) According to the Plaintiff, the ALJ's RFC assessment is inconsistent with the ALJ's other findings that the Plaintiff was mildly or moderately limited in his mental functioning due to his mental impairments. (*Id.* 11–12.) Citing *SEC v. Chenery*, 332 U.S. 194 (1947), the Plaintiff asserts that his case requires remand for clarification of the ALJ's RFC. (*Id.* 13.)

At step four of the sequential evaluation process, the ALJ must complete an assessment pursuant to 20 C.F.R. § 404.1545. A claimant's RFC is the most a claimant can still do despite his or her physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). In assessing an applicant's RFC, the ALJ will consider all of the relevant medical and nonmedical evidence in

9

the record. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). Pursuant to SSR 96-8p:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Ultimately, a RFC assessment must be supported by substantial evidence.

> At Step Four of the sequential evaluation, the ALJ found that the Plaintiff:
>
> has the residual functional capacity to perform light work . . . except that he is limited to work that does not require climbing and more than occasional balancing, stooping, kneeling, crouching and crawling. He cannot work in unprotected heights or operate hazardous moving machinery. He would be absent at least one day a month. He could not use his non-dominant hand for fine finger manipulation.

(ALJ Decision 5.) In evaluating the Plaintiff's RFC, the ALJ reviewed the Plaintiff's treatment records. (*Id.* 6–8.) The ALJ considered the Plaintiff's treatment for encephalitis and his history of left-sided weakness and excessive fatigue. (*Id.* 6.) In the ALJ's view, examinations of the Plaintiff revealed limited cognitive deficits. (*Id.*) Acknowledging that the Plaintiff experienced initial difficulties with cognitive functioning after being hospitalized for encephalitis, the ALJ observed that medications had been effective in controlling the Plaintiff's symptoms, including left temporal lobe epilepsy. (*Id.* 7.) The ALJ noted that two neuropsychological evaluations did not demonstrate significant cognitive impairments. (*Id.* 7–8.) To further support his RFC assessment, the ALJ discussed the Plaintiff's activities of daily living and his behavior at the administrative hearing, concluding that the Plaintiff had exaggerated his mental impairments. (ALJ Decision 8–9.)

1.      *The ALJ's Consideration of Evidence Contrary to the Ruling*

The Court finds two legal errors in the ALJ's RFC analysis. First, in finding that the Plaintiff did not have significant cognitive limitations, the ALJ did not discuss evidence indicating that the Plaintiff had: difficulty adapting to work-related changes; difficulties with visual memory; and mild restrictions with regard to his activities of daily living, social functioning, and concentration, persistence or pace. "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry*, 580 F.3d at 477 (citing *Villano*, 556 F.3d at 563; *Indoranto*, 374 F.3d at 474).

On January 20, 2007, Dr. Musgrave completed a neuropsychological evaluation of the Plaintiff. (R. 364–79.) During her interview with the Plaintiff, the Plaintiff reported numerous cognitive limitations, including problems with his memory. (R. 369–70.) Based on her evaluation of the Plaintiff, Dr. Musgrave concluded that the Plaintiff had "some visual spatial difficulties" and that his visual memory was "quite impaired." (R. 378–79.) Dr. Musgrave noted that the Plaintiff's effort throughout the evaluation was inconsistent, but found that the Plaintiff's difficulties with visual memory could not be explained by inconsistent effort alone. (*Id.*) Dr. Musgrave then completed a Mental Residual Functional Capacity Assessment (R. 380–81), finding that the Plaintiff's ability to respond appropriately to changes in the work setting was "markedly limited" (R. 381). This is consistent with Dr. Musgrave's personality assessment, in which she stated that the Plaintiff was "unrealistic," "inflexible," and "rigid." (R. 377–78.)

On June 9, 2009, Joelle Larsen, Ph.D, completed a Psychiatric Review Technique at the request of the SSA. (R. 545–58.) Dr. Larsen found that the Plaintiff was mildly restricted with

regard to his: activities of daily living; social functioning; and concentration, persistence or pace. (R. 555.) Dr. Larsen based his findings in part on Dr. Wayne Von Bargen's medical opinion and stated that the Plaintiff had mild limitations in adaptive functioning. (R. 557.) The ALJ incorporated Dr. Larsen's findings regarding the Plaintiff's functional limitations into his decision at Step Two of the sequential evaluation. (ALJ's Decision 4.)

When viewed as discrete findings, the Plaintiff's mental limitations—difficulty adapting to work-related changes; difficulties with visual memory; and mild restrictions with regard to his activities of daily living, social functioning, and concentration, persistence or pace—may appear to be of limited significance. However, when viewed in combination, these limitations constitute a line of evidence contrary to the ALJ's RFC assessment. The ALJ repeatedly cited evidence supporting the conclusion that the Plaintiff had no significant mental limitations or cognitive defects and did not include any restrictions based on the Plaintiff's mental impairments. Contrary to the Seventh Circuit's admonition in *Terry*, the ALJ failed to discuss evidence presented by the Plaintiff that contradicted the ALJ's conclusion that the Plaintiff suffered from limited cognitive impairments.

This is of particular concern to the Court because of the evidentiary weight the ALJ afforded Dr. Musgrave's and Dr. Van Bargen's opinions. In analyzing the Plaintiff's RFC, the ALJ stated that he accorded "great weight to the opinions of Drs. Musgrave and Van Bargen." (ALJ Decision 9.) As previously discussed, Dr. Musgrave found that the Plaintiff's visual memory was "quite impaired" and that the Plaintiff was "markedly limited" in his ability to adapted to changes in a work setting. Relying on Dr. Van Bargen's findings, Dr. Larsen found that the Plaintiff was mildly restricted with regard to his: activities of daily living; social

functioning; and concentration, persistence or pace, and had mild limitations in his adaptive functioning. Despite the great weight the ALJ afforded the opinions of these medical sources, the ALJ failed to discuss these findings in his RFC assessment. In evaluating a claimant's RFC, an ALJ is obligated to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p. Further, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* Here, the ALJ failed to address the findings of Drs. Musgrave and Larsen that were inconsistent with his conclusion that the Plaintiff did not suffer from significant cognitive impairments.

On remand, the ALJ should explicitly discuss the findings of Dr. Musgrave and Dr. Larsen that the Plaintiff experienced difficulty adapting to work-related changes; difficulties with visual memory; and mild restrictions with regard to his activities of daily living, social functioning, and concentration, persistence or pace. To comport with the Social Security Regulations and Seventh Circuit precedent, the ALJ should explain what impact these findings have on his RFC assessment.

2.   *The ALJ's Consideration of the Plaintiff's Mental Impairments*

Second, in analyzing the Plaintiff's RFC, the ALJ did not discuss all of the Plaintiff's mental impairments. At Step Two of the sequential evaluation, an ALJ must determine whether a claimant has a medically determinable impairment that is severe, or a combination of

impairments that is also severe. 20 C.F.R. § 404.1520(c). In the instant case, at Step Two, the ALJ found that the Plaintiff was mildly restricted with regard to his: activities of daily living; social functioning; and concentration, persistence or pace. However, the ALJ did not mention these impairments in his analysis of the Plaintiff's RFC at Step Four of the sequential evaluation.

The Plaintiff cites to *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596 (N.D. Ill. Jan. 17, 2012), in support of his argument for remand. In *Paar*, the court considered a fact pattern analogous to the one at hand in the present case. There, at Step Two of the sequential evaluation, the ALJ found that the claimant had mild limitations in his activities of daily living, social functioning, and concentration. *Paar*, 2012 WL 123596, at *7. Later, in assessing the claimant's RFC, the ALJ failed to consider the claimant's mental impairments:

> [T]he ALJ gave no indication that his RFC analysis included the mild mental limitations found at Step 2 in Mr. Paar's activities of daily living, social functioning, and concentration. Social Security Ruling 96–8p makes clear that such limitations determined at Step 2 under the special technique are not a substitute for a RFC finding. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments[.]" SSR 96–8p. The failure to consider the combined effect of a non-severe mental limitation, together with a claimant's other severe impairments, warrants remand.

*Id.* at *13 (citations omitted).

In determining a claimant's RFC, an ALJ is obligated to consider all of an individual's impairments, regardless of severity, because even non-severe impairments and their interaction with other severe impairments "may . . . be critical to the outcome of the claim." SSR 96-8p. *See also Denton*, 596 F.3d at 423 ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment.") (citing 20 C.F.R. § 404.1523; *Terry*, 580 F.3d at 477;

*Villano*, 556 F.3d at 563). "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton*, 596 F.3d at 423 (citing *Golembiewski*, 322 F.3d at 918). Here, the ALJ failed to consider the impact of the Plaintiff's non-severe mental impairments in evaluating the Plaintiff's RFC. On remand, the ALJ should explicitly discuss the Plaintiff's mild restrictions with regard to his activities of daily living, social functioning, and concentration, persistence or pace in his RFC assessment and analyze their impact on the Plaintiff's ability to engage in substantial gainful activity.

### C.     Step Five of the Sequential Evaluation

Although the Plaintiff did not raise a challenge to the ALJ's decision at Step Five of the sequential evaluation, the Court offers the following advice concerning the ALJ's hypothetical to the vocational expert (VE). At step five of the sequential evaluation, the government must prove that a significant number of jobs exist in the national economy which a claimant can perform despite his or her physical and mental limitations. 20 C.F.R. § 404.1520(a)(4)(v); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). "The Commissioner typically uses a vocational expert to assess whether there are a significant number of jobs in the national economy that the claimant can do." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (citing *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993)). At the administrative hearing, the ALJ may present the vocational expert with a hypothetical incorporating the claimant's physical and mental limitations to aid in determining what, if any, jobs the claimant can perform. A valid hypothetical must "include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). "Among the limitations the VE must consider are deficiencies of concentration,

persistence and pace." *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (citing *Stewart*, 561 F.3d at 684; *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)). The Seventh Circuit has found "that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *O'Connor-Spinner*, 627 F.3d at 619.[1]

> In this case the ALJ presented the VE with the following hypothetical:
>
> Assume, if you will, an individual sixty-two years of age with a college education, and the past work history that you summarized for us. Assume that individual is limited to work at the light exertional level. He is further limited to occupations which do not require climbing, and no more than occasional balancing, stooping, kneeling, crouching, and crawling. Could not work at unprotected heights, or operate hazardous moving machinery. I want you to assume further that the individual would probably be absent, and let's make it at least one day a month. With those limitations, would that individual be capable of any of Mr. Verlee's past employment?

(R. 51.) The VE responded that the Plaintiff would be capable of his past employment. (*Id.*) The ALJ continued, asking the VE "[i]f you were to add to that that the individual was limited to simple repetitive tasks, would that individual be capable of any of Mr. Verlee's past employment?" (R. 51–52.) In response, the VE stated that the Plaintiff would not be able to perform his past employment if he was limited to simple repetitive tasks. (R. 52.)

Notably, despite finding at Step Two of the sequential evaluation that the Plaintiff had mild restrictions in his activities of daily living, social functioning, and concentration, persistence or pace, the ALJ did not include these mental impairments in his hypothetical to the

---

[1] The Seventh Circuit has recognized that ALJs are not required to include the terms "concentration, persistence, and pace" in their hypothetical (1) where the VE is familiar with a claimant's limitation; (2) where an ALJ's "alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform;" or (3) where the claimant's underlying conditions were included in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619–20. The record does not support a finding that any of these exceptions apply in this case.

VE. *O'Connor–Spinner* instructs that a valid hypothetical should include all of a claimant's limitations with limited exceptions. Here, the ALJ presented the VE with a hypothetical that did not include the Plaintiff's specific mental limitations. Rather, the ALJ's hypothetical limited the Plaintiff to "simple repetitive tasks." But limiting a hypothetical to "simple repetitive tasks" does not account for limitations of concentration, persistence, and pace. *See O'Connor-Spinner*, 627 F.3d at 620 (collecting cases). Nor does the Court believe that the use of the phrase "simple repetitive tasks" account for limitations in social functioning or activities of daily living.

Therefore, on remand, the Court recommends that the ALJ address the aforementioned concerns related to his hypothetical to the vocational expert.

## CONCLUSION

For the reasons stated above, the Court SUSTAINS the Plaintiff's Objections to the Report & Recommendations [ECF No. 30] and ADOPTS IN PART the Report and Recommendation [ECF No. 27] consistent with this opinion. The decision of the Commissioner is AFFIRMED IN PART and REMANDED IN PART to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

SO ORDERED on April 23, 2013.

                     s/ Theresa L. Springmann
                     THERESA L. SPRINGMANN
                     UNITED STATES DISTRICT COURT
                     FORT WAYNE DIVISION