**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **RONALD F. VERLEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO.: 1:12-CV-45** |
| | ) | |
| **CAROLYN COLVIN, Acting** | ) | |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Reverend Ronald Verlee brought this suit to contest a denial of disability benefits by

Defendant Commissioner of Social Security ("Commissioner"). On April 24, 2013, District

Judge Theresa Springmann entered an Opinion and Order ("Order") that reversed the

Commissioner's denial of benefits and remanded the case to the Commissioner for further

proceedings. (Docket # 31.) Verlee filed a motion to recover attorney fees in the amount of

$18,622.80 under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Docket # 33,

40.) The Commissioner opposes Verlee's fee request, arguing that its litigation position was

"substantially justified," and, alternatively, that the hourly rate of $184.75 and the 100.8 hours

billed by Verlee's attorneys were not reasonable. (Docket # 36.)

Under 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule

72-1, the District Judge referred this case to the undersigned Magistrate Judge for the issuance of

---

[1] Although Plaintiff brought this suit against Michael J. Astrue, the former Commissioner of Social
Security, Carolyn W. Colvin became the Acting Commissioner on February 14, 2013. As such, under Federal Rule
of Civil Procedure 25(d), Colvin is automatically substituted as a party in place of Astrue. FED. R. CIV. P. 25(d).

a Report and Recommendation. (Docket # 41.)  Having reviewed the parties' argument on the

matter (Docket # 33, 36, 40), the undersigned Magistrate Judge recommends that Verlee's

request for attorney fees be GRANTED, but that the fee award be reduced from $18,622.80 to

$16,239.53.  This Report and Recommendation is based on the following facts and principles of

law.

## I.  LEGAL STANDARD

Under the EAJA, "[e]xcept as otherwise specifically provided by statute, a court shall

award to a prevailing party other than the United States fees and other expenses . . . incurred by

that party in any civil action . . . brought by or against the United States . . . unless the court finds

that the position of the United States was substantially justified . . . ." 28 U.S.C. § 2412(d)(1)(A).

The substantial justification standard requires that the Commissioner show that its position was

grounded in "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for

the theory propounded; and (3) a reasonable connection between the facts alleged and the legal

theory advanced." *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006); *see also Cunningham

v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006); *Golembiewski v. Barnhart*, 382 F.3d 721, 724

(7th Cir. 2004).  The Commissioner bears the burden of establishing that its position was

substantially justified. *Cunningham*, 440 F.3d at 863; *Golembiewski*, 382 F.3d at 724.

"[T]he Supreme Court has entrusted the question whether the [C]ommissioner's position

is substantially justified to the discretion of the district court, in no small part because the

analysis is not susceptible to a firm rule or even a 'useful generalization.'" *Bassett v. Astrue*, 641

F.3d 857, 859 (7th Cir. 2011) (citing *Pierce v. Underwood*, 487 U.S. 552, 561-62 (1988)).  In

fact, "[t]he [C]ommissioner's position may be substantially justified even if it turns out to be

completely wrong." *Id.* (citing *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996)).

"For example, the ALJ's opinion might offer merely a 'cursory and inadequate' analysis of an important point, but that shortcoming alone usually will not be enough to poison the opinion—or the [C]ommissioner's defense of the opinion." *Id*. (citing *United States v. Thouvenot, Wade & Moerschen, Inc*., 596 F.3d 378, 387 (7th Cir. 2010)). "That is because the requirement that the ALJ must articulate an assessment of the evidence is deliberately flexible, so the ALJ's failure to connect all the dots in the analysis—and the [C]ommissioner's defense of those gaps in the ALJ's reasoning—is likely to be grounded in a reasonable, albeit erroneous, interpretation of the facts and law." *Id*. (citations and internal quotation marks omitted). "Indeed it typically takes something more egregious than just a run-of-the-mill error in articulation to make the [C]ommissioner's position unjustified—something like the ALJ's ignoring or mischaracterizing a significant body of evidence, or the [C]ommissioner's defending the ALJ's opinion on a forbidden basis." *Id*. (citing *Golembiewski*, 382 F.3d at 724).

In making a determination of substantial justification, EAJA fees may be awarded if either the Commissioner's prelitigation conduct or its litigation position was not substantially justified. 28 U.S.C. § 2412(d)(2)(D); *Cunningham*, 440 F.3d at 863; *Golembiewski*, 382 F.3d at 724. However, the court must "make only one determination for the entire civil action." *Golembiewski*, 382 F.3d at 724. Thus, a court must make a "global assessment" to determine whether the Commissioner was "substantially justified in continuing to push forward at each stage." *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1081.

## II. THE COMMISSIONER'S SUBSTANTIAL JUSTIFICATION DEFENSE

Verlee advanced four arguments in his appeal, one of which was successful.[2] In that argument, Verlee asserted that the ALJ erred by ignoring certain findings in the consultative opinion of Heidi Musgrave, Ph.D., to which the ALJ assigned "great weight," that were contrary to the ALJ's conclusion. These findings include that Verlee reported some urinary urgency and past bowel incontinence; was "markedly limited" in his ability to respond appropriately to changes in a work setting; and although he had "no significant memory problems" overall, his visual memory was "quite impaired." (Tr. 364-81.) Verlee also argued that the ALJ failed to consider all of his nonsevere impairments when assigning an RFC.

The Commissioner contends that it was substantially justified in defending the ALJ's consideration of Dr. Musgrave's opinion and the RFC, asserting that any shortcomings in the ALJ's decision were rooted in articulation errors, rather than a disregard of Social Security regulations and rulings or judicial precedent. *See Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992) (explaining that "[t]he requirement that the ALJ articulate his consideration of the evidence is deliberately flexible," and thus an ALJ's "fail[ure] to meet this articulation requirement in no way necessitates a finding the [Commissioner's] position was not substantially justified"). For the following reasons, the Commissioner fails to carry its burden of showing that its position was substantially justified.

---

[2] Verlee's unsuccessful arguments were: (1) that the ALJ erred by relying on the vocational expert's ("VE") testimony at step four; (2) that the ALJ's step-four finding violated his rights under the Free Exercise and Establishment Clauses of the First Amendment; and (3) that the ALJ inadequately accounted for Verlee's left upper extremity limitations in the residual functional capacity ("RFC"). (*See* Docket # 20.)

*A. The ALJ Failed to Accommodate Verlee's Mild Cognitive Deficits in the Mental RFC*

The District Judge remanded the ALJ's decision, in part, because the ALJ found at step three that Verlee had mild restrictions in activities of daily living; social functioning; and concentration, persistence, or pace, but then failed to expressly incorporate these nonsevere impairments into the RFC at step four. (Order 10.) Ultimately, this violates judicial precedent and Social Security rulings, and effectively poisons the Commissioner's defense of the ALJ's decision.

To explain, in *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009), the Seventh Circuit Court of Appeals had occasion to discuss the Commissioner's defense of a mental RFC in the context of an EAJA fee request. There, after finding that the claimant had moderate difficulties in maintaining concentration, persistence, or pace, the ALJ posed a hypothetical to the VE that failed to include these deficits, instead simply limiting the claimant to "simple, routine tasks." *Id.* at 682. The Seventh Circuit emphasized that in doing so the ALJ "contravened longstanding agency regulations, as well as judicial precedent," explaining that the hypothetical question posed by the ALJ to the VE "must include all limitations supported by medical evidence in the record" and "[m]ore specifically, the question must account for documented limitations of 'concentration, persistence, or pace.'" *Id.* at 684 (collecting cases). Accordingly, the Court concluded that the Commissioner's position was not substantially justified and that the district court abused its discretion in denying Stewart's fee request. *Id*. at 685.

The ALJ's omission here is even more significant than in *Stewart*. Although the ALJ concluded at step three that Verlee had mild deficits in activities of daily living; social functioning; and concentration, persistence, or pace, he failed to include *any* cognitive

limitations in the RFC.  In contrast to *Stewart*, where the ALJ at least limited the claimant to

work that involved "simple, routine tasks," the ALJ concluded that Verlee could return to his

work as a minister, a *skilled* occupation (Tr. 29).  The failure to address these mild cognitive

limitations when assessing Verlee's RFC "is a critical defect in the ALJ's decision" because

even mild cognitive limitations seemingly could alter the ultimate conclusion on disability with

respect to a skilled occupation. *Corder v. Massanari*, No. 00 C 2714, 2001 WL 1355986, at *3

(N.D. Ill. Nov. 1, 2001).

And this is not a case in which the ALJ relied upon a medical source's translation of

Verlee's mild mental health deficits into a specific RFC finding allowing for skilled work. *See,*

*e.g.*, *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (concluding that the ALJ's

limitation to low-stress, repetitive work adequately incorporated the claimant's moderate mental

limitations because the consulting physician had essentially "translated [his] findings into a

specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive

work").  Rather, Dr. Larsen, who assigned the mild limitations, merely wrote that Verlee could

"perform a wide range of tasks without difficulty," "appears to have the cognitive abilities and

concentration necessary to complete tasks," and that his psychological difficulties were "not

significantly limiting." (Tr. 557.)  Although these comments suggest that Verlee could likely

perform unskilled tasks and activities of daily living, it falls short of providing the necessary

assurance that Verlee could perform his past *skilled* work as a minister.

In short, the Seventh Circuit has instructed that when an ALJ relies on a VE's testimony,

the hypothetical questions based on the claimant's RFC must incorporate *all* of the claimant's

limitations that are supported by medical evidence in the record, including documented

6

limitations of concentration, persistence, or pace. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010); *Stewart*, 561 F.3d at 684; SSR 96-8p, 1996 WL 374184, at *5. Here, the ALJ failed to do so. Consequently, under *Stewart*, the Commissioner's defense of the mental RFC was not substantially justified.

### B. *The ALJ Ignored Two Entire Lines of Evidence*

The District Judge also remanded the Commissioner's decision because the ALJ effectively ignored two entire lines of evidence that were articulated within Dr. Musgrave's opinion: (1) Verlee's report of urinary frequency and occasional bowel incontinence; and (2) that Verlee had a "quite impaired" visual memory and was "markedly limited" in his ability to adapt to changes in a work setting. (Order 8, 12.)

Indeed, "an ALJ is not free to ignore entire lines of evidence." *Johnson v. Astrue*, No. 09 C 5189, 2011 WL 2433498, at *7 (N.D. Ill. June 14, 2011) (citing *Golembiewski*, 382 F.3d at 724). The void in the ALJ's decision about these findings in Dr. Musgrave's evaluation made it impossible for the District Judge to determine whether the ALJ had even considered this evidence. *See id.* That is, the District Judge "ha[d] no place to start its review . . . ." (Order 9.) "[T]his was not a mere failure of articulation on the ALJ's part, but a contravention of the Commissioner's own rulings, and it was therefore not substantially justified." *Johnson*, 2011 WL 2433498, at *7. The District Judge found the ALJ's omission particularly egregious because the ALJ stated that he assigned "great weight" to Dr. Musgrave's opinion. (Tr. 27.)

Therefore, because the ALJ ignored a significant body of evidence contrary to his decision, *see Bassett*, 641 F.3d at 859, the Commissioner's defense of the ALJ's omission was not substantially justified.

*C. One Global Determination*

At the end of the day, the Court must make a "global assessment of the Commissioner's conduct rather than engage in 'argument counting.'" *Begoun v. Astrue*, No. 09 C 1555, 2011 WL 3626601, at *3 (N.D. Ill. Aug. 17, 2011) (quoting *Stewart*, 561 F.3d at 683); *accord Lane v. Apfel*, No. 99 C 2640, 2001 WL 521835, at *3 n.6 (N.D. Ill. May 16, 2001) (emphasizing that a court must not count arguments, but instead focus on the "totality of the circumstances" when considering whether the Commissioner's position was substantially justified). "In general, . . . if the case for remand is strong and clear-cut, *Golembiewski* teaches that it will probably be an abuse of discretion to deny fees. If the case for remand is closer, and especially if it is focused primarily on an inadequate explanation of what might be a reasonable decision, *Cunningham* teaches that it will probably not be an abuse of discretion to deny fees." *Purvis v. Barnhart*, No. 1:04-cv-2124 DFH VSS, 2006 WL 3354518, at *2 (S.D. Ind. Nov. 16, 2006).

Here, many of Verlee's arguments were indeed rejected. *See Bassett*, 641 F.3d at 860 ("[A] district court ought to keep in mind that some of the claimant's attacks on the ALJ's opinion did not hold any water."). Nevertheless, the determination of Verlee's mental RFC is critical to the outcome of disability because the ALJ concluded he could return to his past skilled work as a minister, rendering the case for remand clear-cut. The ALJ's failure to address Verlee's mild mental limitations when assigning his RFC effectively "poisoned" the Commissioner's defense of the ALJ's decision overall, *Bassett*, 641 F.3d at 859, and thus the Commissioner did not have "a rational ground for thinking that [it] had a rational ground for its action," *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994).

In sum, under the totality of the circumstances, the Commissioner has failed to carry its

burden of establishing that its defense of the ALJ's decision was substantially justified overall. *Cunningham*, 440 F.3d at 864. Therefore, it will be recommended that Verlee's motion for fees be GRANTED, subject to the Court's determination of the reasonableness of his attorneys' hourly rate and the hours expended.

### III. THE HOURLY RATE

The Commissioner also argues that the enhanced hourly rate Verlee seeks, $184.75, is not warranted, contending that any fee award should instead be calculated at the statutory rate of $125 per hour. Verlee adamantly disagrees, asserting that he has made the necessary showing to receive an inflation adjustment.

The EAJA "does not authorize an award of the prevailing hourly rate, as such, unless it is less than $125 an hour. For that matter it doesn't authorize an award of $125 per hour, or even $125 plus inflation." *Matthews-Sheets v. Astrue*, 653 F.3d 560, 563 (7th Cir. 2011) (citations omitted). "The $125 rate is a presumptive ceiling; to justify a higher rate the plaintiff must point to inflation or some other special factor." *Id.* (citations omitted); *see* 28 U.S.C. § 2412(d)(2)(A)(ii) ("[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Scott v. Astrue*, No. 08 C 5882, 2012 WL 527523, at *5 (N.D. Ill. Feb. 16, 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"If [the party] points to inflation he must still show that it actually justifies a higher fee; for while it might seem obvious that a statutory price ceiling should be raised in step with

9

inflation, to do that as a rote matter would produce windfalls in some cases." *Matthews-Sheets*, 653 F.3d at 563; *accord Heichelbech v. Astrue*, No. 3:10-cv-65, 2011 WL 4452860, at *2 (S.D. Ind. Sept. 26, 2011).  Therefore, "the lawyer seeking an adjustment must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government." *Matthews-Sheets*, 653 F.3d at 563 (citations omitted).  That is, "[a]n inflation adjustment must . . . be justified by reference to the particular circumstances of the lawyer seeking the increase." *Id*. at 563-64 ("Suppose inflation had not affected the wages he pays his clerical employees, or had been offset by advances in law-office technology or changes in the standards and procedures of the Social Security Administration that made it cheaper to litigate claims for disability benefits.").

Here, in support of his request for the enhanced hourly rate, Verlee asserts that $184.75 is "significantly lower than the actual market rates of [his] lawyers," and that "there has been a material increase in 'the cost of living' since the EAJA's $125 rate ceiling was last raised in 1996." (Pl.'s Corrected Reply 13.)  Verlee then uses the "All Urban" average of the Consumer Price Index to compute the cost of living increase for the fee request, stating that it has increased "approximately 47.9% since March, 1996." (Pl.'s Appl. for Att'ys Fees 3); *see, e.g.*, *Koschnitzke v. Barnhart*, 293 F. Supp. 2d 943, 953 (E.D. Wis. 2003) (remarking that the Consumer Price Index is an acceptable source for calculating an increase in the cost of living, which should be calculated from 1996, when the maximum rate of $125 was set, to the date the work was performed).

While this is a rather lackluster showing on Verlee's part about his "particular circumstances," *Matthews-Sheets*, 653 F.3d at 563-64, the Court nonetheless finds it sufficient to

10

justify a cost of living enhancement, considering that Verlee's requested hourly rate is consistent

with the enhanced hourly rate the undersigned Magistrate Judge has often awarded to one local,

experienced social security litigator. *See, e.g.*, *Kern v. Comm'r of Soc. Sec.*, No. 1:13-cv-87

(N.D. Ind. Oct. 25, 2013) (awarding EAJA fees calculated at $183 per hour); *Mace v. Comm'r of*

*Soc. Sec.*, No. 1:12-cv-203 (N.D. Ind. May 8, 2013) (awarding EAJA fees calculated at $184 per

hour); *Clark v. Comm'r of Soc. Sec.*, No. 12-cv-225 (N.D. Ind. Feb. 10, 2013) (awarding EAJA

fees calculated at $185.75 per hour).

Not to be deterred, the Commissioner next argues that Verlee's requested enhanced

hourly rate should have been calculated with the cost of living increase for the "Midwest Urban"

average of the Consumer Price Index, rather than the "All Urban" index, thereby measuring the

increase in cost of living on a regional basis rather than a national basis. The Commissioner

explains that this would reduce Verlee's requested hourly rate by $4.33, that is, from $184.75 to

$180.42.

But the Commissioner has not provided the Court with any authority on why the

"Midwest Urban" average, rather than the "All Urban" index, is the appropriate tool on which to

rely. And it appears that district courts within the Seventh Circuit "have used both regional and

[the All Urban index], without a clear preference for either." *Rodriguez v. Colvin*, No. 11 C

5637, 2013 WL 5221335, at *3 (N.D. Ill. Sept. 16, 2013) (collecting cases). Furthermore, at

least one experienced, local attorney representing claimants in social security appeals has

consistently been using the "All Urban" index to compute the cost of living increase for EAJA

fees before this Court for at least five years.[3]  Moreover, in this instance the difference in the

hourly rates amounts to only $4.33, a relatively nominal amount.

Therefore, considering that Verlee has adequately justified his request for an increased

hourly rate and the lack of clarity in the case law concerning the appropriate cost of living index,

it will be recommended that Verlee's fee award be calculated at $184.75 per hour.

## IV.  THE NUMBER OF HOURS BILLED

Verlee moves for a total of $18,622.80 for 100.8 hours of work performed by his two

attorneys in federal court.  The components of the fee request are as follows: 36.4 hours reading

the administrative transcript, researching, and drafting the opening brief; 12.5 hours reviewing

the Commissioner's response, researching, and preparing the reply brief; 27.9 hours reviewing

the Report and Recommendation ("R&R"), researching, and preparing objections; 10.8 hours

prosecuting the case in federal court, including preparing the fee application; and 13.2 hours

defending the EAJA fee application. (Pl.'s Appl. for Att'ys Fees 5-6, Ex. 3; Pl.'s Corrected

Reply 15-16.)

Verlee, as the fee applicant, has the burden of proving that the EAJA fees sought are

reasonable. *See* 28 U.S.C. § 2412(d)(1)(B); *Hensley*, 461 U.S. at 437.  Factors the Court should

consider in evaluating the reasonableness of a fee request are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the skill requisite to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations imposed by the

---

[3] *See, e.g.*, Mem. in Supp. of Mot. for Award of Att'ys Fees, *Mace v. Comm'r of Soc. Sec.*, No. 1:12-cv-203
(N.D. Ind. Apr. 18, 2013); Mem. in Supp. of Mot. for Award of Att'ys Fees, *Landez v. Comm'r of Soc. Sec.*, No.
1:11-cv-246 (N.D. Ind. Aug. 2, 2012); Mem. in Supp. of Mot. for Award of Att'ys Fees, *Gaskill v. Comm'r of Soc.
Sec.*, No. 1:08-cv-308 (N.D. Ind. Mar. 1, 2010); Mem. in Supp. of Mot. for Award of Att'ys Fees, *Gray v. Comm'r
of Soc. Sec.*, No. 1:08-cv-167 (N.D. Ind. July 9, 2009).

client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3.

In addition, "[h]ours that are not properly billed to one's *client* are also not properly

billed to one's *adversary* pursuant to statutory authority." *Id.* at 434 (emphasis in original;

internal quotation marks and citation omitted). "As a result, the prevailing party should make a

good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise

unnecessary." *Davenport v. Astrue*, No. 2:07-CV-0064-PRC, 2008 WL 2691115, at \*7 (N.D.

Ind. July 3, 2008) (citing *Hensley*, 461 U.S. at 434). "The amount of a fee award is left to the

discretion of the district court because of its 'superior understanding of the litigation and the

desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Id.*

(quoting *Hensley*, 461 U.S. at 437).

Here, the Commissioner alleges that the amount of time Verlee spent on this case was

excessive, considering that the transcript was just 600 pages in length and the medical issues

were not unusually complex. Specifically, the Commissioner challenges the 36.4 hours

expended on the opening brief and the 27.9 hours expended preparing objections to the R&R,

emphasizing that this time is unreasonable, particularly considering that Verlee's counsel are

experienced practitioners in Social Security matters. The Commissioner questions the

significant amount of time spent on Verlee's argument that the ALJ's decision violated the Free

Exercise and Establishment Clauses under the First Amendment.

Verlee's opening brief was indeed thorough, advancing four different arguments. He

explains that these arguments incorporated various medical research and citations from

seventeen cases.  And in light of his past work as a United Methodist minister, his counsel

researched and described several competing religious occupations found in the Dictionary of

Occupational Titles and doctrinal and theological differences that divide American religious

denominations; and advanced a constitutional challenge, which he claims is an issue of first

impression in the realm of a claim for Social Security disability benefits.

But three of Verlee's arguments ultimately had little merit, suggesting that counsel

perhaps spent too much time pursuing unnecessarily complex arguments.  In fact, Verlee did not

even happen upon what appeared to be his most persuasive (and simple) argument—the ALJ's

failure to address the "paragraph B" criteria when assessing the RFC—until his reply brief.  Thus,

the Court too questions the amount of time Verlee spent researching and drafting his two lengthy

arguments involving constitutional and theological challenges.  "[T]he hallmark of effective

appellate advocacy is to winnow out weaker arguments on appeal and focus on the issues more

likely to prevail." *United States ex rel. Salazar v. Liebach*, No. 01 C 1557, 2002 WL 31253890, at

*19 (N.D. Ill. Oct. 4, 2002) (citing *Smith v. Murray*, 477 U.S. 526, 536 (1986)).  "Appellate

counsel need not, indeed should not, take a 'kitchen sink' approach, raising every conceivable

issue." *Id*. (citing *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000)).

Nevertheless, spending 36.4 hours on an opening brief, while clearly on the high side, "is

not so patently unreasonable as to warrant a reduction." *Groskreutz v. Barnhart*, No. 02-C-454-C,

2005 WL 567814, at *2 (W.D. Wis. Feb. 28, 2005); *see, e.g.*, *Garcia v. Colvin*, No. 1:11-cv-

00165, 2013 WL 1343662, at *2 (N.D. Ind. Apr. 3, 2013) (declining to reduce the 37.75 hours

spent reviewing the transcript, researching, and preparing an opening brief that raised six

arguments); *Burke v. Astrue*, No. 08 C 50136, 2010 WL 1337461, at *3 (N.D. Ill. Mar. 31, 2010)

(concluding that 34.4 hours was a reasonable amount of time to expend reviewing the transcript, researching, and drafting a 13-page, 1.5 spaced opening brief that raised five issues); *Upperton v. Barnhart*, No. 02-C-0534-C, 2003 WL 23185891, at *2 (W.D. Wis. Nov.13, 2003) (determining that it was not unreasonable for two attorneys to spend 37.1 hours, which included 11.1 hours drafting the facts section, reviewing a 499-page transcript and drafting and revising a 32–page brief that advanced seven arguments). And Verlee represents that his attorneys actually spent a great deal more time than that, but wrote off approximately 36% of the total billed hours before submitting the fee application. (Pl.'s Corrected Reply 12.)

As Verlee points out, the total hours expended on this case, less the time spent objecting to the R&R and defending the fee application, was 59.7, which is within the realm of reasonableness for Social Security appeals. *See, e.g., Bryan v. Astrue*, No. 08 C 5472, 2010 WL 438384, at *3-4 (N.D. Ill. Feb. 8, 2010) (collecting cases where fee awards ranging from 53.5 to 61.1 hours); *Snider v. Astrue*, No. 1:08-cv-53, 2009 WL 1766925, at *5 n.3 (N.D. Ind. June 23, 2009) (concluding that 54.50 hours of work on appeal was reasonable and in line with other Social Security cases in the circuit); *Dominguese v. Barnhart*, No. 99-C-0596, 2002 WL 32318281, at *6 (E.D. Wis. July 12, 2002) (collecting cases where fee awards from 53.5 to 66.95 hours of work in a Social Security appeal were considered reasonable).

The 27.9 hours spent preparing the objections to the R&R, however, appears excessive, considering that counsel had already spent a significant amount time, 36.4 hours, researching these same issues when preparing the opening brief. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, No. 1:10-cv-163 (N.D. Ind. March 7, 2012) (awarding 9.2 hours for responding to objections to the R&R); *Wirth v. Barnhart*, 325 F. Supp. 2d 911, 918 (E.D. Wis. 2004 (finding that 4 hours spent

drafting objections to the R&R was "modest"); *Pouska v. Apfel*, No. 99 C 805, 2002 WL 1263996, at *5 (N.D. Ill. June 5, 2002) (finding 15 hours was reasonable to prepare objections). Any "winnowing out" of weaker arguments should have already been accomplished through preparation of the opening brief, *Salazar*, 2002 WL 31253890, at *19, and the arguments should have required little "further development," (Pl.'s Corrected Reply 10), particularly considering that the argument Verlee focused on in his objections—the ALJ's consideration of Dr. Musgrave's opinion—was neither novel nor complex. Therefore, it will be recommended that the hours spent preparing the objections be reduced from 27.9 to 15.

In sum, the undersigned Magistrate Judge recommends that the hours Verlee spent reviewing the transcript, researching, and preparing the objections to the R&R be reduced from 27.9 to 15.[4] In turn, the total number of hours spent on this appeal, including the opposed fee petition, would be reduced from 100.8 to 87.9, thereby reducing the fee award from $18,622.80 to $16,239.53.

## V. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that Plaintiff's Application for Attorneys' Fees (Docket # 33) be GRANTED, except that the fee award be reduced from $18,622.80 to $16,239.53.

The Clerk is directed to send a copy of this Report and Recommendation to the parties' counsel. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the

---

[4] The Commissioner does not specifically challenge the 12.5 hours Verlee spent preparing the reply brief nor the 13.2 hours spent defending the fee application, and the Court agrees that these hours appear reasonable.

proposed findings or recommendations. FED. R. CIV. P. 72(b).  FAILURE TO FILE

OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE

DISTRICT COURT'S ORDER.

SO ORDERED.

Enter for October 28, 2013.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge